**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRAIG K. GOZA, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15-CV-775 CAS |
| | ) | |
| CITY OF ELLISVILLE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This 42 U.S.C. § 1983 matter is before the Court on a motion to partially dismiss plaintiff

Craig K. Goza, Jr.'s First Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, filed by defendants City of Ellisville and individual defendants Travis Detring, George

Corless and Kelly Murray. The motion is directed to Count II and a portion of Count III of the First

Amended Complaint ("complaint"), and is fully briefed and ready for decision. For the following

reasons, defendants' motion to partially dismiss is properly construed as a motion for partial

judgment on the pleadings, and will be granted in part and denied in part.

**I. Background**

This action was filed on May 15, 2015 by plaintiff Craig K. Goza, Jr. The defendants are

the City of Ellisville ("City"); St. Louis County, Missouri;[1] Ellisville police officers Detring, Corless

and Murray (collectively, the "Officer Defendants"); Metro West Fire Protection District paramedics

Scott Fieser and Michael Starck (collectively, the "paramedics" or "Paramedic Defendants"); Metro

West Fire Protection District firefighters James Smith, Brad Stahlman, Steve Newcomb and William

---

[1] By Order of August 14, 2015 (Doc. 34), plaintiff was ordered to serve defendant St. Louis County, Missouri with summons and complaint and file proof of service by September 14, 2015, or the claims against it will be dismissed without prejudice. *See* Rule 4(m), Fed. R. Civ. P.

Evans (collectively, the "firefighters" or "Firefighter Defendants"); and Does 5 through 10. For purposes of this opinion, the Court will sometimes refer to the City and the Officer Defendants collectively as "defendants".

Plaintiff alleges that during the afternoon of January 30, 2014, he was at his parents' home in Ellisville studying for university graduate program exams when he began convulsing from a seizure. Plaintiff's sister witnessed this and called 911 for medical assistance. Approximately twenty minutes later, the Officer Defendants and Does 5-10 arrived at his home in response to the 911 call for medical assistance. At some point thereafter, the paramedics and firefighters arrived. After all of the defendants had arrived plaintiff was still having a seizure or was in a postictal state.[2]

Plaintiff alleges that although defendant Detring knew the 911 call was designated as a "Medical Assistance" call and that plaintiff was suffering a seizure, Detring struck plaintiff twice in the head, handcuffed him, placed him in a choke hold, placed his body weight on top of plaintiff and forced his knee into plaintiff's back, and finally deployed a Taser in plaintiff's chest cavity area using the "drive stun" technique, prompting another seizure. Plaintiff alleges that the defendants then "forcibly attached him to a gurney" for transport to a hospital, and Detring again deployed the Taser into plaintiff's chest in the "drive stun" technique, because plaintiff was convulsing on the gurney. Detring deployed the Taser into plaintiff's chest yet a third time during the ride to the hospital. Plaintiff alleges the defendants acted in concert with each other and knew that plaintiff had serious medical need. Plaintiff also alleges that after the first time Detring struck him, the

---

[2]     The term "postictal" is defined as, "Following a seizure, e.g., epileptic." Stedman's Medical Dictionary 1546 (28th ed. 2006).

defendants knew there was a substantial risk to plaintiff's continued health and safety, but they took no action to intervene to protect him.[3]

Plaintiff bring this action under § 1983 for violations of his civil rights. Plaintiff asserts claims for excessive force and unreasonable seizure against the Officer Defendants and Does 5-10 (Count I); deliberate indifference to safety and health against the Officer Defendants, the Paramedic Defendants, the Firefighter Defendants and Does 5-10 (Count II); and public entity liability against Ellisville and St. Louis County (Count III). Plaintiff also asserts state law claims against the Officer Defendants and Does 5-10 for assault and battery (Count IV), false arrest (Count V), intentional infliction of emotional distress (Count VI), and against the Paramedic Defendants and Firefighter Defendants for recklessness (Count VII).

## II. Legal Standard

Defendants filed their answer to the complaint on June 25, 2015 (Doc. 26), and subsequently filed their motion to dismiss on the same date. A Rule 12(b)(6) motion technically cannot be filed after an answer has been submitted. See Fed. R. Civ. P. 12(b); see also Sletten & Brettin Orthodontics, LLC v. Continental Cas. Co., 782 F.3d 931, 934 n.2 (8th Cir. 2015). Rule 12(h)(2) provides, however, that a defense of failure to state a claim upon which relief can be granted may be raised in a motion for judgment on the pleadings under Rule 12(c). The Court will therefore construe defendants' motion to dismiss as a motion under Rule 12(c). See Westcott v. City of

---

[3] Plaintiff alleges in Count II that the Officer Defendants "acted in concert and joint action with each other. Each Defendant is therefore liable for the injuries and damages resulting from each other Defendants' deliberate indifference to Plaintiff's health and safety." Complaint at 15, ¶ 105. "[I]n § 1983 suits 'each defendant's conduct must be independently assessed' because § 1983 'does not sanction tort by association.'" Estate of Johnson v. Weber, 785 F.3d 267, 271 n.3 (8th Cir. 2015) (quoting Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 805-06 (8th Cir. 2010)). The Officer Defendants' motion to dismiss does not address plaintiffs' "joint action" allegation.

Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The distinction is "purely formal" as a motion under Rule 12(c) is reviewed under the standards that govern a Rule 12(b)(6) motion. Westcott, 901 F.2d at 1488.

On a motion to dismiss, the Court accepts as true the factual allegations contained in the complaint and grants the plaintiff the benefit of all reasonable inferences that can be drawn from those allegations. See Lustgraaf v. Behrens, 619 F.3d 867, 872-73 (8th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. Discussion

### A. Officer Defendants' Motion for Judgment on Count II

The Officer Defendants move for judgment on plaintiff's claims against them in Count II for deliberate indifference to a serious medical need, for failure to state a claim. The Officer Defendants assert they are entitled to judgment as matter of law because plaintiff alleges that EMS personnel were on the scene during the alleged injury. The Officer Defendants acknowledge that the Due Process Clause of the Fourteenth Amendment requires police to provide medical care to "persons . . . who have been injured while being apprehended by the police," citing Teasley v. Forler, 548 F.Supp.2d 694, 709 (E.D. Mo. 2008) (quoted case omitted), but assert this duty is fulfilled "by promptly summoning the necessary medical help or by taking the injured detainee to the hospital,"

citing <u>Maddox v. City of Los Angeles</u>, 792 F.2d 1408, 1415 (9th Cir. 1986).[4]  Defendants argue that

because plaintiff alleges paramedics and firefighters "responded to the scene and assumed the duty

---

4    The Officer Defendants' memorandum in support of their motion to dismiss does not include
adequate attribution for some of the authority it cites.  The following text appears to have been taken
without alteration from Judge Hamilton's decision in <u>Teasley</u>, 548 F.Supp.2d at 709, including string
cites and the Court's summation of case holdings:

> This duty is fulfilled, however, by promptly "summoning the
> necessary medical help or by taking the injured detainee to the
> hospital." <u>Maddox v. City of Los Angeles</u>, 792 F.2d 1408, 1415 (9th
> Cir. 1986).  Absent unusual circumstances, a police officer cannot be
> held liable under § 1983 for failing to provide first aid or CPR so
> long as he has summoned the necessary medical help.  <u>See</u> <u>Tagstrom</u>
> <u>v. Enockson</u>, 857 F.2d 502, 504 (8th Cir. 1988) (holding officer who
> called ambulance, but failed to administer CPR to injured
> motorcyclist did not violate Due Process Clause when ambulance
> arrived in approximately six minutes); <u>Tatum v. City & County of</u>
> <u>San Francisco</u>, 441 F.3d 1090, 1099 (9th Cir. 2006) (holding that
> police officers who called an ambulance for a handcuffed suspect due
> to his difficulty breathing did not violate Due Process Clause by
> failing to administer CPR); <u>Wilson v. Meeks</u>, 52 F.3d 1547, 1556
> (10th Cir. 1995) (refusing to find that police officers never have a
> duty to render first aid, but finding that police officer who promptly
> summoned medical help and left a detainee laying on the ground face
> down with labored breathing and a gunshot wound did not give rise
> to a duty to render first aid); <u>Rich v. City of Mayfield Heights</u>, 955
> F.2d 1092, 1097 (6th Cir. 1992) (holding that aside from summoning
> medical help, police have no duty to cut down an inmate discovered
> hanging in his jail cell).

Defs.' Mem. Supp. Mot. Dismiss at 4-5 (Doc. 24); <u>compare</u> <u>Teasley</u>, 548 F.Supp.2d at 709).
Defendants do not use quotation marks or provide citation to <u>Teasley</u> to indicate it as the source of
the language quoted above.

    "[C]itation to authority is absolutely required when language is borrowed." <u>United States v.</u>
<u>Bowen</u>, 194 F. App'x 393, 402 n.3 (6th Cir. 2006).  The failure to provide clear attribution to a
judicial opinion or other source is "certainly misleading and quite possibly plagiarism," <u>United</u>
<u>States v. Lavanture</u>, 74 F. App'x 221, 224 n.2 (3d Cir. 2003), and the Court notes its strong disfavor
of this practice.  <u>See</u> <u>also</u> <u>United States v. Jackson</u>, 64 F.3d 1213, 1219 n.2 (8th Cir. 1995)
(expressing "disapproval of a style of brief-writing that appropriates both arguments and language
[from a judicial opinion] without acknowledging their source.").

to render medical care to Plaintiff," Complaint at 6, ¶ 24, under Eighth Circuit precedent "a cause of action against police for deliberate indifference to a serious medical need is not actionable where EMS personnel are alleged to be present during the subject occurrences." Defs.' Mem. Supp. Mot. Dismiss at 6. In support, defendants cite <u>Tagstrom v. Enockson</u>, 857 F.2d 502, 504 (8th Cir. 1988) (holding that an officer who called for an ambulance but failed to administer CPR to an injured motorcyclist did not violate the Due Process Clause when the ambulance arrived in approximately six minutes).

The Officer Defendants also assert they are entitled to judgment based on qualified immunity, because it was not clearly established by the date of the incident that "a police officer can violate an individual's Fourteenth Amendment rights regarding medical care." Defs.' Mem. Supp. Mot. Dismiss at 6. This broad statement is followed by a lengthy discussion of general qualified immunity principles, but the defendants' analysis of qualified immunity in the context of the facts of this case is limited to the following statement:

> Here, as explained above, the law was not clearly established that an officer can violate an individual's Fourteenth Amendment rights regarding medical care, as the law was not clearly established on January 30, 2014. In fact, the Eighth Circuit's decisions cited above provide strong rationale that no such right existed. Accordingly, Defendants [] are entitled to Qualified Immunity as the law was not clearly established and as no violation occurred.

Defs.' Mem. Supp. Mot. Dismiss at 8.

Plaintiff responds that the Officer Defendants were sent to his home in response to a medical assistance call but rather than rendering medical aid, they assaulted the victim they had been dispatched to help. Plaintiff states that even when paramedics arrived on the scene, the Officer Defendants continued their assault and prevented him from receiving medical treatment. Plaintiff

asserts he has pleaded facts that support his deliberate indifference claims for "Defendants' choice to assault rather than assist a medical victim." Pl.'s Response at 2.

Plaintiff further responds that deliberate indifference to a serious medical need may include actions that further delay the patient receiving treatment, citing <u>Vaughan v. Lacey</u>, 49 F.3d 1344, 1346 (8th Cir. 1995) ("Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed."). Plaintiff states that the complaint alleges the Officer Defendants were the first to arrive on the scene but instead of "securing medical aid" they grossly misinterpreted his seizure symptoms and assaulted him by beating, choking and tasing him. Plaintiff states the complaint alleges that after the paramedics arrived, the Officer Defendants continued to assault plaintiff and delayed his receipt of treatment, and that neither the Officer Defendants nor the paramedics gave him any medical treatment.[5] Plaintiff asserts that these factual allegations support his claim that the Officer Defendants delayed his receipt of medical treatment and caused him to need further treatment, and thus were deliberately indifferent to his serious medical need.

Plaintiff also asserts that defendants' argument they are entitled to qualified immunity because the paramedics were on the scene within a reasonably prompt time calls for a factual determination that is inappropriate on a motion to dismiss. Finally, plaintiff responds that the motion ignores the allegations in Count II that the Officer Defendants were deliberately indifferent by failing to protect him from the serious risk posed by other officers during their continued assault of plaintiff. Plaintiff states that he expressly pleads a claim under the Fourteenth Amendment for the Officer Defendants' failure to fulfill their "affirmative obligation to protect those in their custody

---

[5]    Plaintiff does not offer citation to specific paragraphs of his complaint in support of these assertions.

from being assaulted." Complaint, ¶ 103. Plaintiff states that he alleges the Officer Defendants witnessed their fellow officers punch, choke and tase plaintiff while he was suffering from a seizure and unable to protect himself, including after he was restrained to a gurney, but failed to intervene to protect him from these acts of violence. Id., ¶¶ 106-11.

In reply, the Officer Defendants do not address plaintiff's argument that they were deliberately indifferent to his serious medical need by assaulting him and thus denying or delaying his access to medical treatment. The Officer Defendants argue plaintiff's assertion that a fact question exists as to how promptly the paramedics arrived on the scene does not affect the qualified immunity analysis on the claim of deliberate indifference to a serious medical need for failure to provide medical treatment. The Officer Defendants assert that under Tagstrom and other authority, they are entitled to qualified immunity if paramedics were already summoned, even if by someone other than the defendants, or if the paramedics were already on the scene at the time in question. Defendants state that as pleaded, plaintiff's Complaint alleges the paramedics and firefighters "subsequently responded to the scene and then assumed the duty to render medical care to Plaintiff." Complaint at 6, ¶ 24. Thus, defendants contend that the facts as pleaded entitle them to qualified immunity.

> The Officer Defendants also reply that plaintiff's reference to an alleged failure to intervene is contained in a specifically labeled count regarding an alleged "deliberate indifference to safety and health." Doc. No. 25, Count II. To the extent Plaintiff now argues that he intended to state a claim regarding failure to intervene pertaining to an alleged Fourth (and Fourteenth, via incorporation) Amendment violation, such is not how he pleaded it in his First Amended Complaint.

Defs.' Reply at 4. Defendants argue that because a claim for failure to intervene is derivative in nature, plaintiff has failed to plead sufficient facts to state a cause of action regarding failure to intervene regarding an alleged deliberate indifference to a medical need. Defendants add in a

footnote, "In addition, the law was not clearly established that such a claim has been recognized." Defendants do not develop their qualified immunity argument or provide any case law to support it.

As an arrestee, plaintiff's constitutional claims based on failure to provide medical care arise under the Fourteenth Amendment, but the Eighth Circuit has held that the Eighth Amendment's deliberate indifference standard applies to the claims of arrestees. Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012) (analysis of deliberate indifference claim brought by arrestees is the same as claim brought by inmate); see Thompson v. King, 730 F.3d 742, 746 (8th Cir. 2013) (applying deliberate indifference standard to claims of denial of medical care by estate of arrestee).

A claim that officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); see also Farmer v. Brennan, 511 U.S. 825 (1994). In a case concerning the deprivation of medical care, a plaintiff must demonstrate that (1) he suffered an objectively serious medical need; and (2) the defendant actually knew of the medical need but, subjectively, was deliberately indifferent to it. See Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" Jones v. Minnesota Dep't of Corrections, 512 F.3d 478, 481 (8th Cir. 2008) (quoting Coleman, 114 F.3d at 784). "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844.

Defendants do not contend that plaintiff was not suffering from an objectively serious medical need. As for the second element, "In order to demonstrate that a defendant actually knew

of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." Thompson, 730 F.3d at 746-47 (quoted case omitted). "This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate[.]" Id. (internal quotations and citations omitted).

Here, the Officer Defendants contend they are entitled to judgment on the pleadings because the complaint alleges that plaintiff's sister called 911 and all of the defendants, including the paramedics, were on the scene during the alleged injury. Thus, defendants assert that as a matter of law they cannot be said to have failed to reasonably respond to plaintiff's need for medical care, and have satisfied their obligation under the Fourteenth Amendment.

The Court agrees that defendants are entitled to judgment on plaintiff's claims in Count II that are based on the Officer Defendants failure to personally provide plaintiff with medical treatment. In reaching this conclusion, the Court is guided by the Supreme Court's decision in City of Revere v. Massachusetts General Hospital, 463 U.S. 239 (1983), and the Maddox and Tagstrom decisions cited by defendants. In Revere, the Supreme Court held that in the context of an alleged deprivation of medical care, the governmental defendant "fulfilled its constitutional obligation by seeing that [the injured plaintiff] was taken promptly to a hospital that provided the treatment necessary for his injury." Id., 463 U.S. at 245.

In Maddox, the Ninth Circuit held the district court did not err in instructing the jury that any failure by the defendant officers to personally render cardiopulmonary resuscitation to the plaintiff's decedent was not a violation of the decedent's constitutional rights, where they took him to the hospital. Maddox, 792 F.2d at 1415. In Tagstrom, the Eighth Circuit held that a police officer "was

in no way deliberately indifferent to [the detainee's] medical needs" where he promptly called an ambulance upon finding a suspect injured after a high-speed motorcycle chase, instead of personally rendering medical assistance such as CPR. Tagstrom, 857 F.2d at 503-04 (stating the officer "properly performed his duty by immediately calling an ambulance"). More recently, this Court stated that a police officer's obligation to provide medical care under the Fourteenth Amendment "is fulfilled . . . by promptly 'summoning the necessary medical help or by taking the injured detainee to the hospital.'" Teasley, 548 F.Supp.2d at 709 (quoting Maddox, 792 F.2d at 1415).

Plaintiff's complaint alleges that medical assistance had been summoned by his sister's call to 911 before the Officer Defendants arrived at his home. Plaintiff alleges on information and belief that the Officer Defendants arrived and "were thereafter joined by" the paramedics and firefighters, and that he was still suffering from a seizure or was in a postictal state when all of the defendants had arrived. Complaint at 7, ¶¶ 20-26. Although plaintiff asserts there is a factual dispute as to how soon the paramedics arrived, any such dispute is immaterial because medical assistance had been summoned before the Officer Defendants arrived. See Maddox, 792 F.2d at 1415. Because the Officer Defendants' duty to plaintiff under the Due Process Clause would be satisfied by promptly calling for medical assistance, and they had no duty to personally provide him with medical assistance, the defendants cannot have been deliberately indifferent to plaintiff's serious medical need by failing to personally provide medical assistance when medical care had already been summoned by plaintiff's sister and was on the way. See id., Tagstrom, 857 F.3d at 503-04.

As for plaintiff's assertion that he alleges facts to show the Officer Defendants failed to intervene to prevent his being beaten, choked and tased, Count II does allege the Officer Defendants "chose not to intervene to protect Plaintiff from any further acts of violence." Complaint, ¶ 111. Defendants' cryptic and undeveloped argument in their Reply, as quoted above, appears to assert

that because Count II asserts a claim of deliberate indifference to plaintiff's serious medical need–and not an excessive force claim–plaintiff's assertion that the Officer Defendants failed to intervene to prevent further acts of violence cannot support his deliberate indifference to serious medical need claim.[6] Defendants argue that because they had no duty to offer plaintiff medical assistance, he cannot assert a failure to intervene claim regarding alleged deliberate indifference to a medical need, as the failure to intervene claim is derivative of the underlying deliberate indifference claim, citing Dowell v. Lincoln County, 927 F.Supp.2d 741, 757 (E.D. Mo. 2013).

The Eighth Circuit has held that it is fatal to a failure intervene claim if a plaintiff cannot show that the "officer observed or had reason to know that excessive force would be or was being used." Farrington v. Smith, 707 F.3d 963, 972 (8th Cir. 2013) (quoted case omitted). Defendants' assertion that a failure to intervene claim is derivative is correct. However, more fundamentally, the Eighth Circuit has held that "outside of the excessive force context, there is no clearly established law regarding a duty to intervene to prevent constitutional violations." Hess v. Ables, 714 F.3d 1048, 1052 (8th Cir. 2013) (citing Livers v. Schenck, 700 F.3d 340, 360 (8th Cir. 2012)). As a result, the Officer Defendants are entitled to qualified immunity on Count II's claim that they failed to intervene to protect plaintiff from actions that constituted deliberate indifference to his serious medical need, because the constitutional right plaintiff asserts was not clearly established at the time of the violation. See Robinson v. Payton, 791 F.3d 824, 828 (8th Cir. 2015) ("An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving

---

[6] The Court notes that plaintiff's excessive force claim, Count I, does not include any factual allegations that the Officer Defendants failed to intervene to protect him from further acts of violence.

party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation.")

Nonetheless, the Officer Defendants have not established that they are entitled to judgment on all claims in Count II.  Deliberate indifference may include intentionally denying or delaying access to medical care.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104–05 (1976); <u>Dulany v. Carnahan</u>, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing <u>Estelle</u>); <u>Vaughn</u>, 49 F.3d at 1346 (same).  In contrast to <u>Maddox</u> and <u>Tagstrom</u>, where officers were alleged to have violated individuals' constitutional rights by failing to personally perform medical treatment, here plaintiff pleads facts from which it may reasonably be inferred that the Officer Defendants intentionally denied or delayed his access to medical treatment.

Plaintiff alleges that the Officer Defendants beat, choked, handcuffed and tased him in his home–in the presence of the paramedics–while he was unable to control his body because he was having a seizure, even though the defendants knew the 911 call was placed for medical assistance because plaintiff was experiencing a seizure, and there was no evidence plaintiff had committed a crime, had weapons, or had harmed anyone.  Plaintiff also alleges he was tased by the Officer Defendants a second time after he was strapped to a gurney, and a third time in the ambulance on the way to the hospital, so that his condition was worsened and he did not receive any medical treatment until he arrived at the hospital.  Accepting the facts pleaded as true on this motion for judgment on the pleadings, it is a reasonable inference from those facts that plaintiff states a claim in Count II against the Officer Defendants for deliberate indifference to his serious medical need by intentionally denying or delaying his access to medical care.[7]

_____

[7]     Although the Court finds that plaintiff has alleged sufficient facts from which it may be reasonably inferred that he intends to assert a claim of deliberate indifference to his serious medical

The Officer Defendants assert in their Reply that they are entitled to qualified immunity on plaintiff's claim they intentionally denied or delayed his access to medical care. "An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation." Robinson, 2015 WL 3937653, at *3 (citing Pearson v. Callahan, 555 U.S. 223, 227 (2009)).

"In assessing whether a right is clearly established, the Supreme Court has emphasized that we must define the right 'in light of the specific context of the case, not as a broad general proposition.' Saucier v. Katz, 533 U.S. 194, 201 (2001)." Robinson, 791 F.3d at 828 (parallel citations omitted). "'[T]he salient question . . . is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional.'" Id. (quoting Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014)). "As such, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Id. (quotation marks and quoted case omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (internal quotation marks, brackets and quoted case omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id.

---

needs based on the Officer Defendants' intentional denial or delay of his access to medical care, the complaint does not expressly identify such a claim. The Eighth Circuit has instructed, "[W]e do not rely on the names of the causes of action that the plaintiff alleges. Instead we look at the substance of the allegations, based on a fair reading." In re Baycol Products Litig., 732 F.3d 869, 875 n.4 (8th Cir. 2013) (quoting Kutten v. Bank of Am., N.A., 530 F.3d 669, 670 (8th Cir. 2008)). The Court will grant plaintiff leave to file a second amended complaint to expressly assert this cause of action.

The Officer Defendants' assertion that it was not clearly established by January 30, 2014 that "a police officer can violate an individual's Fourteenth Amendment rights regarding medical care" is an overly broad statement. Among other things, a police officer can violate an individual's Fourteenth Amendment rights if he intentionally denies or delays access to medical treatment. <u>See</u> <u>Tagstrom</u>, 857 F.2d at 503-04 (citing, among other things, <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1985) (deliberate indifference is characterized by "obduracy and wantonness" in the denial of necessary treatment); and <u>Cummings v. Roberts</u>, 628 F.2d 1065, 1068 (8th Cir.1980) (question of fact raised when plaintiff alleged he was deliberately denied medical treatment for three days)).

Here, the complaint's allegations, viewed in the light most favorable to plaintiff, establish a violation of his Fourteenth Amendment due process right not to have a government officer intentionally deny or delay his access to medical care. Plaintiff alleges that his sister placed a 911 call for medical assistance because he was having a seizure in their home, and that the Officer Defendants were dispatched in response to the 911 call. Plaintiff alleges the Officer Defendants knew he was having a seizure, and when they arrived at his home plaintiff was lying on the ground either still having a seizure or in a postictal state. Plaintiff alleges the Officer Defendants knew he did not have a weapon, had not committed a crime, and had not threatened or harmed anyone. Nonetheless, the Officer Defendants beat, choked and tased plaintiff repeatedly, denied or delayed his access to medical care and his transport to the hospital, and inflicted further injuries on him.

It has long been clearly established that intentional denial or delay of access to medical care is a constitutional violation. <u>See</u> <u>Estelle</u>, 429 U.S. at 104-05; <u>Dulany</u>, 132 F.3d at 1239; <u>Vaughn</u>, 49 F.3d at 1346. Here, qualified immunity is properly denied because the facts as alleged by plaintiff would show a violation of his clearly established rights. Although the Court is not aware that this precise fact pattern has been the subject of a Supreme Court opinion, the Officer Defendants

were on fair notice that it was beyond debate they could not respond to a call for 911 medical assistance for a person having a seizure in his own home and then beat, choke and repeatedly tase the person, knowing that he was having a seizure and knowing he was unarmed, had committed no crime, had not harmed anyone, and was not a threat to anyone.  See al-Kidd, 131 S. Ct. at 2083; cf. Ellison v. Lesher, __ F.3d __, 2015 WL 4645667, at *5 (8th Cir. Aug. 6, 2015) (affirming denial of qualified immunity although no Supreme Court precedent existed on fact pattern as described by district court, where the defendant "officers were on fair notice that they could not enter a home simply because they perceived as mouthy a resident who told them that he wanted no help and desired to be left alone.").

The Officer Defendants' motion for judgment on the pleadings on plaintiff's claim for denial or delay of medical treatment, on the basis of qualified immunity, should therefore be denied.

B.  <u>City's Motion to Dismiss Count III</u>

In Count III, plaintiff asserts a claim of public entity liability against defendant City of Ellisville, alleging that the constitutional violations described in the complaint were caused as a result of (1) official policies authorizing the unconstitutional actions of the individual defendants, (2) widespread policies or customs sanctioning such unconstitutional actions, and (3) failure to effectively screen, train, supervise, discipline and/or control the individuals these entities employ.

The City moves for judgment on Count III "regarding medical care" on the basis that a municipality may not be liable under § 1983 if the officers did not commit a constitutional tort against the plaintiff, citing <u>Luckert v. Dodge County</u>, 684 F.3d 808, 820 (8th Cir. 2012).[8]  The City asserts it is entitled to judgment because plaintiff has failed to show any underlying constitutional

---

[8]    Count III also includes other claims against the City that are not at issue on this motion .

violation. The City also asserts it is entitled to judgment on Count III as "the law was not clearly established that an officer could violate an individual's Fourteenth Amendment right regarding medical care when EMS were present during the occurrence on January 30, 2014," citing Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1259 (8th Cir. 2010). Defs.' Mem. Supp. Mot. Dismiss at 8. The City does not develop this latter argument any further or explain the significance of the Veatch decision to its argument.

Plaintiff responds that the City's motion to dismiss should be denied because he has pleaded sufficient facts demonstrating that City officers exhibited deliberate indifference to his health and safety. Plaintiff asserts that if his allegations are proved, they will establish liability on an underlying constitutional claim.

The Eighth Circuit "has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." McCoy v. City of Monticello, 411 F.3d 902, 922-23 (8th Cir. 2005) (citing cases); see, e.g., McVay v. Sisters of Mercy Health Sys., 399 F.3d 904, 909 (8th Cir. 2005) ("Since we have found that [the officer's] actions were not unconstitutional, McVay cannot make a prima facie case against the City under section 1983"). Here, the Court has concluded as a matter of law that plaintiff cannot state a claim against the Officer Defendants for failing to personally provide him medical assistance. Therefore, to the extent Count III against the City arises from the Officer Defendants' failure to personally provide plaintiff with medical assistance, the City's motion should be granted.

The Court also concluded as a matter of law that the Officer Defendants were entitled to qualified immunity on Count II's claim that they failed to intervene to protect plaintiff from actions that constituted deliberate indifference to his serious medical need. There is no clearly established

law regarding a duty to intervene to prevent constitutional violations outside of the excessive force context. See Hess, 714 F.3d at 1052.

The imprecise and summary manner in which the City asserts it is entitled to dismissal of Count III ("the law was not clearly established that an officer could violate an individual's Fourteenth Amendment right regarding medical care when EMS were present during the occurrence on January 30, 2014,") could be interpreted as an assertion the City is entitled to qualified immunity. "Qualified immunity is not a defense available to governmental entities, but only to government employees sued in their individual capacity." Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). The City's citation to Veatch, however, may have been intended to refer to the principle that "a municipality 'cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established.'" Veatch, 627 F.3d at 1259 (quoting Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385, 393 (8th Cir. 2007) (en banc)).[9]

Because there is no clearly established law concerning a duty to intervene outside of the context of excessive force, Hess, 714 F.3d at 1052, the City is entitled to dismissal of Count III to the extent it seeks to impose municipal liability based on the Officer Defendants' failure to intervene to protect plaintiff from actions that constitute deliberate indifference to his serious medical need. See Veatch, 627 F.3d at 1259.

Finally, the Court denied the Officer Defendants' motion for judgment on Count II's claim that they intentionally denied or delayed plaintiff access to medical care. As a result, the City's

---

[9] The Court must speculate as to the meaning of the City's citation to Veatch, because the City did not provide any legal analysis to explain how the case supports its argument or entitles it to judgment on the pleadings.

motion for judgment on Count III must be denied on plaintiff's claims against it that allege the Officer Defendants' unconstitutional actions were based on official policies, that City policies or customs sanction such unconstitutional actions, or that the City's failure to effectively screen, train, supervise, discipline and/or control the Officer Defendants caused the constitutional violations.

      C.  <u>References to Fifth and Eighth Amendments</u>

The defendants assert in a footnote in their memorandum in support that plaintiff's references in the complaint to the Fifth and Eighth Amendments should be dismissed, because pretrial detainees' claims are properly analyzed under the Due Process Clause of the Fourteenth Amendment instead of the Eighth Amendment, <u>McRaven v. Sanders</u>, 577 F.3d 974, 979 (8th Cir. 2009), and the Due Process Clause of the Fifth Amendment applies only to the federal government, <u>Baribeau v. City of Minneapolis</u>, 596 F.3d 465, 484 (8th Cir. 2010). Plaintiff concedes that his references in paragraph 140 of the complaint to the Fifth and Eighth Amendments should be dismissed. Plaintiff's references to the Fifth and Eighth Amendments are improper surplusage for the reasons stated by defendants and will be dismissed.

## IV. Conclusion

For the foregoing reasons, the Court concludes that the Officer Defendants' motion to dismiss Count II, construed as a motion for judgment on the pleadings, should be granted in part and denied in part. Judgment will be granted in the Officer Defendants' favor on Count II on plaintiff's claims against them (1) for failure to personally provide medical care to plaintiff, and (2) for failure to intervene to protect plaintiff from actions that constituted deliberate indifference to his serious medical need. The motion will be denied on Count II on plaintiff's claims that the Officer Defendants intentionally denied or delayed his access to medical care.

The City of Ellisville's motion to dismiss Count III on plaintiff's claims related to medical care, construed as a motion for judgment on the pleadings, should be granted in part and denied in part. The motion will be granted on plaintiff's claims against the City arising from the Officer Defendants' (1) failure to personally provide medical care to plaintiff, and (2) failure to intervene to protect plaintiff from actions that constituted deliberate indifference to his serious medical need. The City's motion will be denied on Count II on plaintiff's claims against the City arising from the Officer Defendants' intentional denial or delay of plaintiff's access to medical care.

*     *     *     *     *

Defendants are cautioned that if they move for summary judgment or raise the issue of qualified immunity at a subsequent stage of this case, their supporting memoranda must develop their arguments beyond mere conclusory statements importing the appropriate terms of art. Defendants must also "connect the dots" by providing a meaningful legal analysis of cases they cite as supporting authority. Defendants' conclusory and undeveloped arguments in support of the instant motion, as quoted above and discussed herein, caused unnecessary difficulty and uncertainty in the Court's effort to ferret out the meaning of their arguments and resolve the issues presented by their motion. Finally, defendants must always provide proper attribution for their cited authority.

Accordingly,

**IT IS HEREBY ORDERED** that defendants City of Ellisville, Missouri and individual defendants Travis Detring, George Corless and Kelly Murray's Motion to Partially Dismiss, construed as a motion for partial judgment on the pleadings, is **GRANTED in part** and **DENIED in part**. [Doc. 23]

As to defendants Detring, Corless and Murray, the motion is **GRANTED** and defendants are entitled to judgment on Count II on plaintiff's claims (1) for failure to personally provide medical

care to plaintiff, and (2) for failure to intervene to protect plaintiff from conduct that constituted deliberate indifference to his serious medical need. The motion is **DENIED** on Count II's claims that these defendants intentionally denied or delayed plaintiff's access to medical care.

As to defendant City of Ellisville, the motion is **GRANTED** and the City is entitled to judgment on Count III on plaintiff's claims arising from defendants Detring, Corless and Murray's (1) failure to personally provide medical care to plaintiff, and (2) failure to intervene to protect plaintiff from conduct that constituted deliberate indifference to his serious medical need. The motion is **DENIED** on Count III's claims against the City arising from defendants Detring, Corless and Murray's intentional denial or delay of plaintiff's access to medical care.

**IT IS FURTHER ORDERED** that plaintiff's references to the Fifth and Eighth Amendments in paragraph 140 of the First Amended Complaint are **DISMISSED**.

**IT IS FURTHER ORDERED** that plaintiff is granted leave to file a second amended complaint to specifically assert his claims for failure to intervene to protect him from excessive force, and for the intentional denial or delay of medical treatment, as noted in footnotes 6 and 7 of this Memorandum and Order, by **September 1, 2015**.

An appropriate partial judgment will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this _18th_ day of August, 2015.